UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS H. OLIVA PAIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>VOXELMAPS INC.,<br><br>    Defendant. | Case No. 25-cv-05640-PCP<br><br>**ORDER REMANDING CASE TO STATE COURT**<br><br>Re: Dkt. No. 15 |

Plaintiff Luis Paiz, a former employee of defendant Voxelmaps Inc., brings this putative wage-and-hour class action on behalf of persons employed by Voxelmaps as hourly or non-exempt employees throughout California after January 2021. Paiz initially filed his complaint in Santa Clara County Superior Court. Voxelmaps then removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Voxelmaps asserts that removal was proper because this is a civil action between citizens of different states and the amount in controversy on the named plaintiff's claims exceeds $75,000. Paiz now moves to remand this case to state court for lack of jurisdiction under 28 U.S.C. § 1441. For the following reasons, Voxelmaps has not met its burden of establishing this Court's jurisdiction. Accordingly, the Court remands the action to Santa Clara County Superior Court.

**LEGAL STANDARDS**

A defendant may remove a case from state court to federal court only if the federal court would have originally had subject matter jurisdiction over it. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity, meaning that all persons or

associations on one side of the controversy (i.e., all plaintiffs) are citizens of different states from all persons or associations on the other side (i.e., all defendants). *Strawbridge v. Curtiss*, 2 L.Ed. 435 (1806). To establish diversity jurisdiction, the amount in controversy must also exceed $75,000. *See* 28 U.S.C. § 1332(a).

When evaluating whether the amount in controversy requirement has been satisfied, a court may consider the complaint, the contents of the notice of the removal, and any "summary-judgement-type evidence" provided. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). If the amount in controversy is not clear from the face of the complaint—as is the case here—the removing party bears the burden to show that the amount exceeds the jurisdictional threshold. *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 789 (9th Cir. 2018). The removing party may rely on "a chain of reasoning that includes assumptions to satisfy its burden to prove … the amount in controversy … as long as the reasoning and underlying assumptions are reasonable." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (internal citations omitted). The amount in controversy reflects "the *maximum* recovery that plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

## ANALYSIS

The only issue presented here is whether the amount in controversy exceeds $75,000. Paiz asserts seven causes of action against Voxelmaps, all of which are potentially relevant in evaluating the amount in controversy: (1) failure to pay all wages (including minimum and overtime wages) in violation of California Labor Code §§ 1194, 1194.2, 1197 and sections 3 and 4 of the applicable Industrial Welfare Commission (IWC) Wage Orders; (2) failure to pay overtime wages in violation of California Labor Code §§ 510, 1194, 1198, and section 3 of the applicable Wage Order; (3) failure to provide meal periods in violation of California Labor Code §§ 512, 226.7, and section 11 of the applicable Wage Order; (4) failure to provide rest periods in violation of California Labor Code §§ 226.7 and section 12 of the applicable Wage Order; (5) failure to reimburse business expenses in violation of California Labor Code §§ 2800 and 2802; (6) failure to issue accurate and itemized wage statements in violation of California Labor Code §

2

1    226(a) and the applicable Wage Order; (7) failure to pay all wages due upon separation of

2    employment in violation of California Labor Code §§ 201, 202, and 203; and (8) violation of

3    California's Unfair Competition Law (UCL), Cal. Bus. & Profs. Code § 17200 *et seq*.

4    Voxelmaps asserts that these causes of action give rise to an amount in controversy of at

5    least $115,733.33: $9,200 for unpaid minimum and overtime wages, $8,000 for meal and rest

6    break penalties, $2,000 for unreimbursed business expenses, $23,250 for wage statement

7    penalties, $4,800 for waiting time penalties, $39,550 for Private Attorney General Act ("PAGA")

8    penalties, and $28,933 in attorneys' fees. For the reasons set forth herein, the Court cannot accept

9    Voxelmaps's estimates or conclude on the basis of the evidence and argument presented that

10   diversity jurisdiction is present.

**I.     Voxelmaps relies on unreasonable assumptions to calculate unpaid wages, break penalties, unreimbursed business expenses, and PAGA penalties.**

Voxelmaps's estimate of the amount in controversy is rooted in two undisputed facts: that Paiz was employed from January 20, 2024 until Oct 25, 2025—39 weeks and 6 days—and that his average hourly rate was $20. Based on those facts, Voxelmaps assumes that Paiz worked five shifts a week over 20 two-week pay periods of employment, for a total of 200 shifts.

"What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (noting that in a wage-and-hour case, the number of employees in a class may be most easily determined by examining the defendant's employment records, and that the defendant should therefore provide that information in opposing any motion to remand). Here, the plaintiff is a single person who worked for Voxelmaps for less than a year. Voxelmaps has full possession and control of his records, as Voxelmaps itself admits. To support its briefing, Voxelmaps submitted a declaration by its human resources manager which included the statement that the manager "accessed and reviewed" Paiz's "business and personnel records" in connection with this matter. The declaration nonetheless failed to identify the specific number of shifts and pay periods worked by Paiz.

While it is not Voxelmaps's role to "prove the truth of [Paiz's] allegations," *Patel v. Nike*

3

*Retail Servs., Inc.,* 58 F. Supp. 3d 1032, 1040 (N.D. Cal. 2014), it is in the best—and perhaps only—position to provide information about the number of shifts and pay periods the plaintiff worked, along with what the plaintiff was paid during those periods. Under these circumstances, the Court generally would not be willing to credit Voxelmaps's assumption that Paiz worked 200 shifts over 20 pay periods during the course of his employment. For the reasons explained below, however, Voxelmaps fails to establish that the amount in controversy here exceeds $75,000 even if those assumptions are accepted.

### A.   Minimum wage and overtime claims

The complaint alleges that Voxelmaps "engaged in a systematic pattern of wage and hour violations," including by failing to pay Paiz "at least minimum wage" "for all hours worked" and for requiring him "to work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or on a seventh consecutive day of work." It seeks recovery of both "unpaid overtime and double time compensation." Based on those allegations, Voxelmaps assumes that Paiz was not paid at least minimum wage for one hour per shift (where the lowest applicable minimum wage in effect at that time was $16/hour), with a maximum of 200 total possible shifts. When calculating overtime wages, Voxelmaps again relies on the assumption that Paiz was not paid overtime for one hour per shift over the course of 200 total possible shifts. Voxelmaps does not provide any additional reasoning or case citations to support its calculations.

As an initial matter, Paiz notes that his complaint alleges that he was paid below minimum wage for his *overtime* hours, and that Voxelmaps has improperly double-counted his overtime and minimum wage violations. Because a "plaintiff is the master of his complaint and responsible for articulating cognizable claims," the Court accepts Paiz's contention. *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). Indeed, Voxelmaps's assumptions are inherently contradictory. If Paiz worked 1 hour of overtime per shift, as Voxelmaps assumes, then he presumably worked 9 hours per shift but was paid for only 8. Assuming that he was paid $160 for those 9 hours of work, his pay exceeded the applicable $152 minimum wage for that shift (8 hours paid at $16 per hour and 1 hour paid at $24 per hour) by $8. Voxelmaps's inclusion of $3,200 in unpaid minimum wages in the amount in controversy will therefore be disregarded, and the Court will focus only on

4

the unpaid overtime wages.

While a defendant need not present evidence to support its assumptions, those assumptions must be grounded in the allegations of the complaint. *Perez*, 131 F.4th at 808. Voxelmaps cites Paiz's complaint but does not explain why the allegations therein justify an assumption that Paiz worked one hour of overtime on each eight-hour shift. Nonetheless, given Paiz's allegation that the overtime violations were "systematic," the relatively small amount at issue, and Voxelmaps's exclusion of double-time wages from its estimate, the Court will accept Voxelmaps's assumption for purposes of this motion. *See e.g.*, *Lippold v. Godiva Chocolatier, Inc.,* 2010 WL 1526441, at *3 (N.D. Cal. Apr. 15, 2010) (applying similar assumption). The Court therefore accepts Voxelmaps's estimate that the amount in controversy includes $6,000 in unpaid overtime wages ($30 unpaid overtime per shift times 200 shifts).

### B. Meal and rest break claims

Voxelmaps assumes a 100% violation rate on Paiz's meal and rest break premium claims. While assuming a 100% violation rate may be reasonable in some circumstances, *see Arias*, 936 F.3d at 927, those assumptions must be tied to the language of the complaint. *See, e.g.*, *Navarro v. Servisair, LLC*, 2008 WL 3842984, at *8 (N.D. Cal. Aug. 14, 2008) (holding that allegations of "regular" violations permitted an assumption of a 100% violation rate); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (holding that a 100% violation rate was not an unreasonable assumption when the complaint alleged "uniform practices"); *Ibarra v. Manheim Invs., Inc*, 775 F.3d 1193, 1199 (9th Cir. 2015) (holding that an alleged "pattern and practice" of violations "does not necessarily mean *always* doing something," and applying a 20% rate). For example, the *Mejia* court—which found that the premium violations were "uniform" and therefore could be estimated at 100%—based its reasoning in part on the fact that because the plaintiff was always required to carry a pager, the plaintiff was effectively on duty at all times. *Mejia*, 2015 WL 2452755, at *4.

Here, Paiz alleges a "systematic pattern of wage and hour violations" and that he did not receive "all rest breaks." While Voxelmaps quotes from the complaint, it does not provide any chain of reasoning to justify a 100% violation rate assumption. Given that failure, the Court will

5

assume a 20% violation rate, as other courts have done in similar situations. *See Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a defendant's calculation lacks factual support, courts in this district routinely apply a 20% violation rate.").

Although Voxelmaps may have overestimated the rate of violations, it was not unreasonable in assuming that each offending shift contained both a meal break and a rest break violation. California courts have noted that section 226.7 is "reasonably susceptible [to] alternative interpretations." *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 65 (2011) (noting that the statute's use of "or" suggests two separate violations with a corresponding remedy of one additional hour of pay while "for each workday" suggests a single payment for each workday). The legislative history of that section, however, indicates that the drafters intended to allow two premium payments per workday. Since 2000, the IWC's wage orders have consistently provided a separate remedy for both meal and rest period violations. *Id.* at 68. Because the drafters chose not to modify the Labor Code provision to deviate from this administrative practice of allowing two premium payments, the statute is properly read as allowing a maximum of two hours of premium pay per shift worked. This approach has been adopted by federal courts as well. *See, e.g.*, *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1146 (E.D. Cal. 2018).

Assuming that Paiz is entitled to an hour of additional pay ($20) for meal period violations occurring on 20% of his shifts (40 shifts) and that he is also entitled to an hour of additional pay ($20) for rest break violations on 20% of his shifts (40 shifts), the amount in controversy with respect to Paiz's meal and rest period claims is $1,600.

C.   **Unreimbursed business expenses**

A court may zero-out line items included in a party's amount in controversy calculation when "the assumption is unreasonable on its face without comparison to a better alternative." *Jauregui*, 28 F.4th at 996. Paiz alleges that he and other class members "incurred necessary business-related costs that were not fully reimbursed by Defendants." Based on that allegation, Voxelmaps estimated that Paiz incurred $100 of unreimbursed business expenses for every pay period. It provides no facts or caselaw to support its estimate. Because Voxelmaps's assumption lacks any supporting reasoning, its business expenses calculation will not be included the Court's

amount in controversy calculations.

### D. Wage statement penalties

The penalty for violating section 226 is recovery of either (a) all actual damages but not exceeding $4,000 per employee or (b) $50 for the initial violation and $100 for each violation during a subsequent pay period. Cal. Lab. Code § 226. An employee may collect whichever amount is greater. *Id.*

Voxelmaps assumes the maximum violation of $4,000 but provides no explanation for that assumption. The maximum statutory penalty Paiz could recover is $1,950 ($50 + $100 x 19 pay periods) because Paiz only worked twenty pay periods. Voxelmaps offers no reason why the Court should conclude that Paiz's actual damages (to the extent any exist) exceed that amount. Therefore, the maximum amount that may be included in the amount in controversy is $1,950.[1]

### E. Individual PAGA Penalties

PAGA allows private plaintiffs to stand in the place of public authorities in pursuing penalties for certain Labor Code violations. A PAGA plaintiff is generally entitled to seek a penalty of $100 per pay period for an initial Labor Code violation and $200 for each subsequent pay period in which the defendant committed the same violation. Cal. Lab. Code § 2699. In the complaint, Paiz seeks to recover PAGA penalties for the following Labor Code violations:

> Labor Code §§ 201, 202, 203, 204, 210, 246, 510, 1182.12, 1194, 1197, and 1198 [failure to timely pay all earned wages (including minimum wage and overtime wages)]; Labor Code §§ 226.7 and 512 [failure to provide meal and rest periods and pay premiums for missed meal and rest periods]; Labor Code § 226 [failure to provide accurate itemized wage statements]; Labor Code §§ 1174 and 1174.5 [failure to maintain accurate and complete records showing, among other things, the hours worked daily by and the wages paid to Plaintiff]; and Labor Code §§ 2800 and 2802 [failure to reimburse Plaintiff necessary business expenses].

---

[1] Voxelmaps also includes penalties under Cal. Lab. Code § 226.3 in its wage statement penalties estimate. While that section allows for statutory penalties of $250 for the first pay period violation, and $1000 for the remaining 19 pay period violations, leading to a total sum of $19,250, those penalties can only be collected by individual plaintiffs through a PAGA action. *See Raines v. Coastal Pac. Food Distributors, Inc.*, 23 Cal. App. 5th 667, 673-674 (2018). Accordingly, the § 226.3 penalties are best considered in evaluating the amount in controversy on Paiz's PAGA claim.

Voxelmaps estimates the amount in controversy with respect to Paiz's PAGA claim to be $39,550: $3,900 for meal period violations; $800 for waiting time penalties; $3,900 for rest period violations; $3,900 for minimum wage violations; $3,900 for overtime violations; $19,250 for wage statement violations; and $3,900 for unreimbursed business expense violations. Voxelmaps's estimate is too high in several respects.

The California Legislature reformed PAGA in 2024, barring collection of civil penalties by an aggrieved employee "for any violation of Sections 201, 202, 203, of the Labor Code." Cal. Lab. Code § 2699(h)(3)(i); *see also Martinez v. Sunnova Energy Corp.*, No. 2:24-CV-06346-MRA-MAR, 2025 WL 732350, at *5 (C.D. Cal. Mar. 7, 2025) ("Under the amended PAGA, an aggrieved employee can no longer collect civil penalties for any violation of [sections 201—203]."). Voxelmaps therefore cannot include PAGA penalties for waiting time penalties in the amount in controversy. The Court will therefore disregard that amount.

Voxelmaps's remaining PAGA calculations are too high. Given Paiz's allegation that he was paid below the minimum *overtime* wage—and not below both the minimum wage and the overtime wage—the Court will consider only the overtime violations, reducing the PAGA penalties by $3,900. Additionally, because Voxelmaps failed to provide any reasoning for its business expense reimbursement calculations, the Court will not include any related PAGA penalties in the amount in controversy.

Voxelmaps does, however, properly estimate penalties for wage statement violations. In lieu of default penalties, a PAGA plaintiff may collect the statutory penalties set out in Labor Code § 226(e)(1) so long as the wage statement violations "create injury as a result of a knowing and intentional violation." *Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1194 (E.D. Cal. 2017) (internal citations omitted). Given that the complaint alleges that Voxelmaps's violation of § 226(1) was "knowing and intentional," Voxelmaps's estimate of $19,250 is reasonable. *See supra* note 1.[2]

---

[2] Paiz argues that PAGA's $200 subsequent violations penalty "only applies to violations *after* the employer was on notice that its conduct was unlawful." Because he alleges that Voxelmaps's overtime violations were made "knowingly and willfully," however, Voxelmaps can reasonably

In total, the amount in controversy on Paiz's PAGA claim is $30,950: $3,900 for meal period violations ($100 for the first pay period plus $200 for the next 19 pay periods); $3,900 for rest period violations (same); $3,900 for overtime violations (same); and $19,250 for wage statement violations ($250 for the first pay period plus $1000 for the next 19 pay periods).

### F. Voxelmaps unreasonably relies on a common fund model to calculate attorneys' fees.

When a complaint seeks statutorily authorized recovery of attorneys' fees, the amount in controversy may include those fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). Here, Paiz seeks to recover attorneys' fees under both the California Labor Code and PAGA. To calculate those fees, Voxelmaps assumes a recovery of approximately one-third of the amount in controversy on Paiz's substantive claims. It derives that rate by providing evidence that Paiz's counsel was regularly awarded one-third of the approved settlement amount in other class action settlement approval proceedings.[3] These cases involved similar California Labor Code wage-and-hour claims pursued in state court.

Paiz contends that Voxelmaps's estimate of the attorneys' fees in controversy here is faulty because it fails to apportion attorneys' fees among all members of the putative class here. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001). Paiz asserts that because Voxelmaps failed to provide any evidence regarding his individual share of any attorneys' fees award, the Court should disregard attorneys' fees altogether when calculating the amount in controversy.

Paiz is only partially correct. Contrary to Paiz's contention, the *Kanter* apportionment rule does not apply where, as here, the court must estimate the amount of attorneys' fees recoverable by the plaintiff solely on his individual claims against the defendant. For the reasons noted above, the amount in controversy here includes $40,500 in damages and penalties that Paiz could recover

---

assume that the subsequent violations PAGA penalty applied to Paiz's second through twentieth shifts.

[3] The Court take judicial notices of Exhibits A-D to the Declaration of Alicia A. Belock, as court records are "undisputed matters of public record," *Rivera v. Corr. Corp. of Am.*, 999 F.3d 647, 649 n.1 (9th Cir. 2021).

9

if he succeeds on his own claims against Voxelmaps, and he is an entitled to statutory fee-shifting on those claims. Those recoverable fees must be included in their entirety in the amount in controversy.

Paiz is correct, however, that Voxelmaps fails to provide a sufficient basis for its estimate of the amount of fees in controversy. The fees awards identified by Voxelmaps were all made pursuant to the common fund doctrine, in which courts award a percentage of the "fund" created by an attorney's efforts to that attorney. Any award of attorneys' fees in this case, however, would be made pursuant to California's fee-shifting statutes and paid separately by Voxelmaps. *See* Cal. Lab. Code §§ 226(e), 1194; Cal. Code Civ. P. § 1021.5. Such an award is calculated not as a percentage of a plaintiff's recovery but instead by applying the lodestar method, which involves multiplying the number of hours the prevailing party reasonably expended on the litigation by the attorney's reasonable hourly rate. *Lopez v. Advanced Drainage Sys., Inc.*, 777 F. Supp. 3d 1100, 1109 (N.D. Cal. 2025) (citing *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001)). Voxelmaps has not provided any evidence or argument regarding the fees Paiz might recover under the lodestar method. The Court has not been provided with any means of determining how many hours Paiz's counsel could reasonably be expected to spend litigating Paiz's individual claims, nor what hourly rate Paiz's counsel could reasonably charge for that work.

Because Voxelmaps's calculation of attorneys' fees is based on an inapplicable and unreasonable assumption and it has offered no alternative basis for its fees calculations, attorneys' fees will not be included in the amount in controversy.[4]

## CONCLUSION

Many of Voxelmaps's calculations for the amount in controversy are premised on unreasonable assumptions. Accordingly, the Court disregards those calculations. The remaining, reasonable assumptions lead to the following calculations: $6,000 in unpaid overtime wages ($30 unpaid overtime per shift times 200 shifts); $1,600 in unpaid meal period and rest break premiums

---

[4] Notably, given the other reductions noted above, the amount in controversy would be insufficient to support diversity jurisdiction even if the Court were to adopt Voxelmaps's method and calculate the attorneys' fees as one-third of the amount in controversy on the underlying claims.

($20 for meal period violations occurring on 40 shifts plus $20 for meal period violations occurring on 40 shifts); $1,950 in wage statement penalties ($50 for the first pay period violation plus $100 for the next 19 pay period violations); and $30,950 in PAGA penalties ($3,900 for meal period violations plus $3,900 for rest period violations plus $3,900 for overtime violations plus $19,250 for wage statement violations). A revised estimate for the amount in controversy is $40,500, which is far short of the amount necessary for the Court to exercise jurisdiction. Because Voxelmaps has not established the prerequisites for this Court's jurisdiction under 28 U.S.C. § 1332(a), the Court remands the case to state court.

**IT IS SO ORDERED.**

Dated: October 16, 2025

P. Casey Pitts
United States District Judge